B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br><br>El Farmer Inc.<br>3623 Ave Militar, PMB 353<br>Isabela PR 00662<br><br><br>Condado 5 LLC<br>PO Box 190085<br>San Juan, PR 00919 | **DEFENDANTS**<br>Commonwealth of Puerto Rico, through Secretary of Justice, Domingo Emmanuelli Hernández, PO Box 9020192, San Juan, PR 00902-0192<br><br>PR Department of Agriculture, through its Secretary, Ramón González Beiró; BOX 10163, San Juan PR 00908- 1163<br><br>Office for the Regulation of the Dairy Industry (ORIL) through its Administrator Ramón González Beiró: BOX 10163, San Juan PR 00908- 1163 |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Homel A. Mercado-Justiniano Esq., attorney for El Farmer Inc<br>Calle Ramírez Silva #8 Ensanche Martínez Mayaguez, PR 00680<br>Tel: (787) 831 – 2577; Fax: (787) 805 -2577 hmjlaw2@gmail.com<br><br>Ferraiouli LLC, Attorney for Condado 5 LLC<br>Gustavo A. Chico Barris, Esq.: gchico@ferraiuoli.com<br>Frances C Brunet Uriarte, Esq.: fbrunet@ferraiuoli.com<br>Tomás F Blanco Pérez, Esq.: tblanco@ferraiuoli.com<br>221 Ponce de León Ave, 5th Floor<br>San Juan PR 00917 | **ATTORNEYS** (If Known) |

| **PARTY** (Check One Box Only)<br>X Debtor □ U.S. Trustee/Bankruptcy Admin<br>X Creditor □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor □ U.S. Trustee/Bankruptcy Admin<br>□Creditor X Other: ORIL, PR Dep. Of Agriculture,<br>□ Trustee              Commonwealth of PR |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| **FRBP 7001(1) – Recovery of Money/Property** | **FRBP 7001(6) – Dischargeability (continued)** |
|---|---|
| ☐11-Recovery of money/property - §542 turnover of property | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☐12-Recovery of money/property - §547 preference | ☐68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☐13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☐14-Recovery of money/property – other | ☐64-Dischargeability - 523(a)(15), divorce or separation |
| §549 Avoidance of Post Petition Transaction | Obligation (other than domestic support) |
|  |  |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien** | ☐65-Dischargeability – other |
| ☐ 21-Validity, priority or extent of lien or other interest in property |  |
|  | **FRBP 7001(7) – Injunctive Relief** |
| **FRBP 7001(3) – Approval of Sale of Property** | ☐ 71-Injunctive relief – imposition of stay |
| ☐31-Approval of sale of property of estate and of a co-owner | ☐ 72-Injunctive relief – other Violation of Automatic Stay |
| - §363(h) |  |
|  | **FRBP 7001(8) Subordination of Claim or Interest** |
| **FRBP 7001(4) – Objection/Revocation of Discharge** | ☐81-Subordination of claim or interest |
| ☐41-Objection / revocation of discharge - §727(c),(d),(e) |  |
|  | **FRBP 7001(9) Declaratory Judgment** |
| **FRBP 7001(5) – Revocation of Confirmation** | ☐91-Declaratory judgment |
| ☐ 51-Revocation of confirmation |  |
|  | **FRBP 7001(10) Determination of Removed Action** |
| **FRBP 7001(6) – Dischargeability** | ☐01-Determination of removed claim or cause |
| ☐66-Dischargeability - §523(a)(1), (14),(14A) priority tax claims |  |
| ☐62-Dischargeability - §523(a)(2), false pretenses, false representation, | **Other** |
| actual fraud | ☐SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.* |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, | ☐ 02-Other (e.g. other actions that would have been brought |
| embezzlement, larceny | in state Court if unrelated to bankruptcy case) |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand: |

| Other Relief Sought |
|---|
|  |

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | |
|---|---|---|
| NAME OF DEBTOR<br>El Farmer Inc. | BANKRUPTCY CASE NO.<br>22-0036-MCF12 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Puerto Rico | DIVISION OFFICE | NAME OF JUDGE<br>MILDRED CABAN |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING<br>NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Homel A Mercado Justiniano<br>/s/ Gustavo A Chico-Barris<br>/s/ Frances C Brunet Uriarte<br>/s/ Tomás F. Blanco Pérez | | |

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|------|----------------------------------------|
|      | /s/ Homel A Mercado Justiniano |
|      | /s/ Gustavo A Chico-Barris |
|      | /s/ Frances C Brunet Uriarte |
|      | /s/ Tomás F. Blanco Pérez |

**B104 (FORM 104) (08/07), Page 2**

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 104 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self- explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 22-00036-MCF12 |
| EL FARMER INC. | CHAPTER 12 |
| DEBTOR | |
| EL FARMER INC.<br>CONDADO 5 LLC | ADVERSARY NO. 22 - |
| PLAINTIFFS | |
| V. | |
| THE COMMONWEALTH OF PUERTO RICO<br>Through the Secretary of Justice DOMINGO<br>EMMANUELLI HÉRNANDEZ,<br>THE PUERTO RICO DEPARTMENT OF<br>AGRICULTURE Through its Secretary RAMÓN<br>GONZÁLEZ BEIRÓ<br>OFFICE FOR REGULATION OF THE DAIRY<br>INDUSTRY (ORIL) Through its Administrator,<br>JAVIER LUGO RULLÁN.<br>Insurance Company ABC<br>Insurance Company XYZ<br>John Doe<br>Jane Doe | |
| DEFENDANTS | |

**TO THE HONORABLE COURT:**

   **COMES NOW**, plaintiffs, EL FARMER INC. (also Debtor in case 22-00036-MCF12), secured creditor CONDADO 5 LLC, through their undersigned attorneys, and very respectfully before this Honorable Court present the following complaint and prays:

**COMPLAINT**

## I.      JURISDICTION OF THIS COURT

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§1334 and 157(a) and the General Order of referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. §157(b). If this action involves any noncore elements, plaintiffs hereby express their consent to the entry of final judgment by a Bankruptcy Judge. This action is brought under 42 U.S.C. § 1983 as a Civil Action for Deprivation of Constitutional Rights.

## II.     VENUE

Venue is proper under this District Court pursuant to 28 U.S.C. §§ 1408 & 1409, in as such as all the events or omissions giving rise to the claims of the captioned case occurred within Puerto Rico.

## III.    PARTIES

**PLAINTIFFS**

1.  EL FARMER INC., (from here on "EFI") a corporation organized under the laws of the Commonwealth of Puerto Rico and registered in the Puerto Rico and principal place of business in Isabela PR. With the following address: 3623 Ave Militar, PMB 353, Isabela PR 00662. El Farmer Inc. is a Debtor in Chapter 12 case numbered 22-00036-MCF12, *In re. El Farmer Inc.*

2.  CONDADO 5 LLC., a Limited Liability Company that is a secured creditor of the Debtor and has a valid security interest over the Debtor's milk quotas. With postal address is PO Box 190085 San Juan PR 00919.

**DEFENDANTS**

3. The Defendant, COMMONWEALTH OF PUERTO RICO is a governmental political entity created under the Constitution of Puerto Rico promulgated on July 25, 1952; It is represented by the Secretary of Justice, Domingo Emmanuelli Hernández. With Address PO Box 9020192, San Juan, PR 00902-0192, Tel. 787 – 721 – 2900 and Fax. 787 – 724 – 4770.

4. The Defendant, PUERTO RICO DEPARTMENT OF AGRICULTURE is a Department under the government of Puerto Rico that was created under Article IV Section 6 of the Constitution of the Commonwealth of Puerto Rico. Its Secretary is Ramón González Beiró. With Address; BOX 10163, San Juan PR 00908- 1163. Tel 787 – 723 -8512 and Fax 787-722- 2283.

5. The Defendant, OFFICE FOR REGULATION OF THE DAIRY INDUSTRY (ORIL) is an office under the Puerto Rico Department of Agriculture, which was created pursuant to Law 34, pursuant to 5 L.P.R.A. § 1092 et. seq. Its current administrator is Ramón González Beiró. With Address: BOX 10163, San Juan PR 00908- 1163, Tel. 787 – 756 -5945 and Fax. 787 – 767 – 4969.

6. Insurance Company ABC, Insurance XYZ, are fictitious names for insurance companies that have insurance policies that will cover the act or omissions incurred by the Defendants in the present case.

7. John Doe, and Jane Doe, are fictitious names for individuals or entities that might be responsible for the acts or omissions mentioned in the present case.

**IV.    FACTS**

1. On January 12, 2022, co-plaintiff, El Farmer Inc., filed a Chapter 12 petition for bankruptcy relief under case no. 22-00036-MCF12.

2. El Farmer Inc. owns the amount of 213,146 liters of bi-weekly milk quota as registered in the Office for the Regulation of the Dairy Industry of Puerto Rico (ORIL in Spanish acronym) under license 3368, which the Debtor valued at $1,598,595.[1]

3. El Farmer Inc has a commercial loan with Condado 5 LLC with an approximate balance of $2,918,888.42.[2]

4. Said Milk Quota owned by El Farmer Inc. has a mortgage secured with a first rank lien with Condado 5 LLC.[3]

5. El Farmer Inc. has been a licensed farmer for over 10 years and participates in ORIL's regulated market for raw milk. El Farmer Inc. has acquired Milk Quotas and participates in said regulated Milk Industry pursuant to Act 34 of June 11, 1957, and ORIL's Regulations adopted thereafter.

6. Condado 5 LLC is El Farmer's secured creditor with a valid lien over the total milk quota of 213,146 quarts/liters of Milk Quota and said lien is registered in ORIL's Registry for Milk Quota Transactions pursuant to ORIL's Regulation Numbered 7 or Regulation 8660 of November 12, 2015.

7. The Milk Industry in Puerto Rico operates under a regulated market and Milk Processing Plants, such as Suiza Dairy Corp. and Vaqueria Tres

---

[1] See Docket No. 1 of Case 22-00036-MCF12, Voluntary Petition, Page 10.
[2] See Proof of Claim No. 3 filed by Condado 5 LLC in the case of In re El Farmer Inc. 22-00036-MCF12.
[3] See Proof of Claim No. 3 filed by Condado 5 LLC in the case of In re El Farmer Inc. 22-00036-MCF12.

Monjitas Inc., must pay dairy farmers at a price per liter of raw milk regulated by ORIL.

8. During the year 2021, the ORIL applied a liquidation method or payment system to farmers that was based on levels. Such levels used the farmer's Milk Quota as a factor to determine the amount of milk a farmer would be paid at first level (fresh milk) and subsequent levels that included excess milk. This system that used milk quotas as a factor to decide payment to farmers had been in place for the last six years.

9. On May 25, 2022, ORIL issued an Administrative Order increasing the price of Raw Milk. Such Administrative Order has no objection notice, nor does it inform any affected party that it may seek Judicial or Administrative review in contravention of Puerto Rico's Administrative Procedure Act, 3 L.P.R.A. §§ 9601 et seq (2017). See Exhibit 1.

10. On May 25, 2022, ORIL issued an Administrative Order in increasing the price of Raw Milk for the Municipalities of Vieques and Culebra. Such Administrative Order has no objection notice, nor does it inform any affected party that it may seek Judicial or Administrative review in contravention of Puerto Rico's Administrative Procedure Act, 3 L.P.R.A. §§ 9601 et seq. (2017). See Exhibit 2.

11. The Administrative Orders attached as Exhibits 1 and 2 were issued without informing affected parties, Public Hearing being held, informing the Consumer Affairs Department (DACO, in Spanish Acronym) and in clear violation of Act 34 of June 11 of 1957 (5 LPRA §1092) and in violations of

the Agreements of Case No. 04-1840 filed with the U.S. District Court for the District of Puerto Rico.

12. On June 8, 2022, ORIL issued Administrative Order No. 2022-33 modifying the existing payment system or liquidation model (as it is known in the Dairy Industry of Puerto Rico), for the raw milk produced and sold by dairy farmers. See Exhibit 3.

13. Administrative Order No. 2022-33 modified the payment system as follows:

"Order

1. It is Ordered, that effective the bi-week that ends in June 8, 2022 and on, the model used for liquidation system uses the production and not the Milk Quota as the factor to pay milk producers.

2. It is Ordered that the new distribution of the products be applied in the following levels:

   a. The raw milk retained for the local marker, Suiza Dairy, Corp., Vaquería Tres Monjitas, Inc. and Industria Lechera de Puerto Rico, Inc. will be grouped in the first level.

   b. The raw milk that is retained for other products by Suiza Dairy, Corp., Vaquería Tres Monjitas, Inc. and Industria Lechera de Puerto Rico, Inc. Will be grouped in a second level.

   c. All discarded milk in treatment plants, at farm level that are required by Administrative Order, milk destined for the Feeding Bank and Orders that are issued to inject funds and money from said purposes, will be grouped in the second level"

See Exhibit 3, Page 4 Paragraphs 1-5

14. Throughout the year 2021, El Farmer Inc produced raw milk and delivered it to the milk processing plant Suiza Dairy Corp.

15. The raw milk produced by El Farmer Inc. from January 1, 2021, through December 31, 2021, had to be paid at the regulatory price at such time, which was $0.86 (per quart/liter of milk sold as fresh milk, or first level milk) minus the regulatory and non-regulatory discounts, which rendered an approximately net payment to dairy farmers of approximately $0.822 per liter of raw milk paid as first level or fresh milk.

16. During the period of January 1, 2021, through December 31, 2021, ORIL *reduced* the payment to El Farmer Inc. for the fresh milk (or first level milk) by making illegal discounts to such payments on the alleged basis that discarded milk losses (milk that had no market) had to be shared by all farmers. These discounts were made without any Administrative Order whatsoever and in clear violation of the Price Order for raw milk that was active at said time.

17. The 2021 natural year had 26 liquidation periods that range from the numbers 2021-01 through 2021-26 and in such periods, El Farmer Inc. was paid between $0.725855 to $0.8119 per liter of first level milk instead of the payment that it was entitled to, pursuant to the Price Order and regulations, See Exhibit 4.

18. The aforementioned payments received by El Farmer Inc. are less than what El Farmer Inc. was entitled to receive for the fresh milk, or first level milk,

pursuant to ORIL's own Price Order, and such deductions were made without an administrative order or authorized by any law, thus constituting a taking of El Farmer's property by ORIL.

19. ORIL's unlawful deductions on El Farmer Inc's payments on raw milk sales, and all deductions on first level milk paid to El Farmer Inc. during the year 2021 account for an amount in excess of $100,000.00.

20. These accumulated losses created by ORIL's modification and illegal deductions in the payments to EL Farmer Inc., resulted in damages for the corporation, such as to not being able to purchase replacement cattle, incur in arrears in payments to creditors and suppliers, and ultimately file a Chapter 12 case under the Bankruptcy Code to avoid irreparable harm to the finances and property of El Farmer Inc.

21. In 2022, from January 1, 2022, to June 7, 2022, ORIL continued to use the liquidation system to pay El Farmer Inc's production using the Milk Quota as a factor. ORIL continued making illegal discounts to such payments on the alleged basis that discarded milk losses (milk that had no market) had to be shared by all farmers. These discounts were made without any Administrative Order and in clear violation of the Price Order for raw milk that was active at said time.

22. During these initial six months of 2022, El Farmer Inc. received payments for the first level milk between $0.697909 to $0.772766 per liter of first level milk instead of the payment that it was entitled to, pursuant to the Price Order and regulations, See Exhibit 5.

23. These illegal reduced payments by ORIL during the first 6 months of year 2022 caused damages of at least $50,000.00.

24. During the years 2021 and the six months of 2022 El Farmer Inc., and all dairy farmers in Puerto Rico, had the choice to regulate their production according to the liquidation factors or percentages of milk quota being purchased at first level (fresh milk) price. Each dairy farmer had the option to produce only the milk that was entitled to the price of $0.86 per liter and did nott have to participate in excess milk markets whose price per liter could be as low as $0.25 per liters.

25. During these 18 months term (year 2021 and 6 months of 2022), El Farmer Inc' highest production period was the bi-weekly period of March 17, 2021 (or liquidation 2021-06) in which El farmer Inc. produced 118,799 liters/quarts of milk.

26. On Liquidation 2021-06, El Farmer Inc was paid 99,666 liters as first level milk and the remaining 19,133 as second level milk. In this bi-weekly period, El Farmer Inc.'s production was paid 84% at first level at the remaining 16% as second level.

27. During said term (January 1, 2021, through June 7, 2022), El Farmer Inc. had the control and decided if it wanted or not to participate in excess milk markets and in what amount.

28. Then, on June 8, 2022, ORIL issued Administrative Order 2022-33 ("AO 2022-33), modifying the liquidation (payment system) to dairy farmers causing El Farmer Inc. substantial economic losses.

29. The liquidation system imposed by ORIL by way of Administrative Order 2022-33 forces dairy farmers to participate in secondary or excess milk market, irrespectively of the amount of milk quota owned or the percentage of the milk quota that said farmer produces.

30. The system imposed in AO 2022-33 resulted in El Farmer Inc being obligated, from June 8, 2022, to sell its production in a 72-74 % at first level milk and the remaining production of 28-26% as second level milk.

31. Once AO 2022-33 became effective, second level milk sales have been paid at $0.39 to $0.41 per liter which is a payment per liter of raw milk that is being paid below the cost to produce it.

32. This imposition by way of AO 2022-33, forces El Farmer Inc to participate in selling its production below cost pursuant to such system and all dairy farmers are forced to participate in the selling raw milk below the costs to produce it.

33. The liquidation system imposed by ORIL after June 8, 2022, has forced El Farmer Inc. to sell an average of 24,000 liters bi-weekly at an average of $0.40 or $9,600.00. EL Farmer Inc. is currently producing 42-45% of its Milk Quota, with the old liquidation system said production would be sold at first level milk for at least twice the amount (more than $0.80 per liter) and would have been sold for $19,200.00. El Farmer is losing at least $9,600.00 bi-weekly because of ORIL's new system that forces the corporation to sell milk below cost of producing the same.

34. The difference of $9,600.00 biweekly creates a scenario where El Farmer Inc. will have severe difficulties in paying its creditors in a Chapter 12 Plan. The lack of income will be reflected in reduced payments to the secured creditor Condado 5 LLC (whose payment before the bankruptcy case were $29,500.00 per month and now is receiving $15,000.00). The lack of income will also be reflected in payment to unsecured creditors in the Chapter 12 Plan, because reduced disposable income will lead creditors who would have receive more than 75% of their unsecured claims to receive less than 10%.

35. ORIL's decisions have affected the market for Milk Quota sales, and values of the Milk Quotas. By ORIL making illegal deductions to payments to farmers (including El Farmer Inc) milk quota loss value from $15.00 per liter to $10.00 per liter during the year 2021. Milk Quota sales beginning 2022 reflected sales prices of $7.00 per liter. After ORIL's modifications to the payment system (new liquidation system OA 2022-33) milk quota price fell to $5.00 per liter.

36. El Farmer Inc. owns 213,146 liters of milk quota in license 3368 which at $15.00 per liter have a value of $3,197,190. The same quota a $5.00 per liter has a value of $1,065,730. This loss of $2,131,460 is due to ORIL's own actions and the same has severely impacted El Farmer's Inc finances.

37. The loss in value that ORIL created in the Milk Quota owned by El Farmer Inc. has hinder El Farmer Inc. from obtaining a loan to refinance Condado 5 LLC's secured debt, because it created a ratio of assets versus debt that

doesn't allow the refinance of debt. Said reduction in Milk Quota prices created a scenario in which banks will not invest because of the volatility of prices, income of farmers and instability in the whole Dairy Industry.

## A. VIOLATION OF CONSTITUTIONAL RIGHTS

### I.    CONSTITUTION OF PUERTO RICO

38. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

39. The Constitution of Puerto Rico provides in Article II, Section 7, establishes that: "It is recognized that the right to life, liberty and property are recognized as fundamental right of the human being. No person shall be deprived of their liberty, or property without due process, and no person shall be denied the equal protection of laws." (our translation)

40. All Governmental Agencies (including the PR Department of Agriculture and ORIL) are subject to the PR Constitution.

41. . "Due process forces the State to guarantee that any interference with citizens property interests be made through a just and equal process". Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887-888 (1997).

42. The Puerto Rico Supreme Court in the case of Zapata et al. v. Zapata, 156 D.P.R. 278, 301-302 (2002), adopted the doctrine of Mathews v. CC2012-0690 13 Eldridge, 424 U.S. 319 (1975) and the 3 prongs established therein to decide what is the right process before depriving a citizen from a protected right: 1) The private interest that will be affected by the official

action; 2) The risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional or substantive procedural safeguards; 3) The Government's interest.

43. "Once the property interest is identified, due process guaranties adequate notification". <u>Marcano Rivera v. Departamento de Estado</u>, 163 D.P.R. 778 (2005).

44. ORIL's unilateral acts from January 1, 2021, through June 7, 2022, of *reducing* the payment to El Farmer Inc. for the fresh milk (or first level milk) by making illegal discounts to such payments on the alleged basis that discarded milk losses (milk that had no market) had to be shared by all farmers constitute a violation of El Farmer's Constitutional Rights. These discounts were made without any Administrative Order whatsoever and in clear violation of the Price Order for raw milk that was active at said time and the same constitute a taking of EL Farmer's property without due process.

45. ORIL's interference with the market created a significant loss and reduction in value for the Milk Quota, this constitutes a taking of property of co-plaintiff El Farmer Inc. who owns 213,146 liters of Milk Quota and of Condado 5 LLC who holds a lien over said milk quota.

46. The loss in value of property of the estate created by ORIL reflects not only in the property of EL Farmer Inc and the lien holder, it also reflects itself in the payout to the general unsecured creditors in EL Farmer's Chapter 12 Case.

## II.   CONSTITUTION OF THE UNITED STATES

47. The 14th Amendment of the Constitution of the United States in its First
    Section states that "All persons born or naturalized in the United States, and
    subject to the jurisdiction thereof, are citizens of the United States and of
    the state wherein they reside. No state shall make or enforce any law which
    shall abridge the privileges or immunities of citizens of the United States;
    nor shall any state deprive any person of life, liberty, or property, without
    due process of law; nor deny to any person within its jurisdiction the equal
    protection of the laws."

48. "The Due Process Clause provides that certain substantive rights, life,
    liberty and property cannot be deprived except pursuant to constitutionally
    adequate procedures." Cleveland Board of Education v. Loudermill, 470
    U.S. 532, 541 (1985).

49. "An essential principle of Due Process is that a deprivation of life, liberty
    or property be preceded by notice and opportunity for hearing appropriate
    to the nature of the case". Mullane v Central Hanover Bank and Trust Co.,
    339 U.S. 306, 312 (1950).

50. The root requirement is that an individual be given the opportunity for a
    hearing before he is deprived of any significant property interest." Boddie
    v. Conneticut, 401 U.S. 371, 379 (1971).

51. In Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922), the Supreme
    Court stated that the "general rule at least is, that while property may be
    regulated to a certain extent, if regulation goes too far it will be recognized

as a taking". Id. at 415; see also Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001). In Pennsylvania Coal Co. v. Mahon, as well as in Wisconsin Cert. LTD. v. Public Serv. Comm., 95 F. 3rd 1359 (7th Cir.1996), a physical taking occurred. Therefore, the state was obligated to justly compensate the aggrieved parties as required by the Constitution of the United States. Moreover, in Pennsylvania Coal Co. v. Mahon, *supra*, the Supreme Court ruled that the challenged act (The Kohler Act) "was not a legitimate exercise of police power, but rather was an unconstitutional taking of defendant's contractual and property rights because it served to take away those valid rights without adequate and just compensation." Id. In that case, even though the restriction over the land was not physical, the Supreme Court found that the restrictions of use imposed under the challenged act "constitute[d] as much a taking as if the land itself had been appropriated." Pennsylvania Coal Co. v. Mahon, 260 U.S. at 393; Pumpelly v. Green Bay Co., 13 Wall. 166; Commonwealth v. Clearview Coal Co., 256 Pa. St. 238.

52. ORIL's unilateral acts from January 1, 2021, through June 7, 2022, of *reducing* the payment to El Farmer Inc. for the fresh milk (or first level milk) by making illegal discounts to such payments constitutes a depravation of property as it does not allow El Farmer Inc. to cover its costs in the milk operations, and/or to perceive a reasonable return on its investment. This same scenario occurs with ORIL's new liquidation system promulgated by ORIL and effective on liquidations to farmers after June 7, 2022 because it obligates EL Farmer Inc. to sell milk in a second level that pays between 39

to 40 cents per liter which is well below the cost to produce it. Thus, the present case entails taking due to the lack of reasonable rate regulation.

53. In Duquesne Light Co. v. Barasch, 488 U.S. 299, 308 (1989), the Supreme Court established that "If the rate does not afford sufficient compensation, the state has taken the use of utility property without paying just compensation and so violated the Fifth and Fourteenth Amendments.".  On that matter, the Court of Appeals for the First Circuit has stated that "regulated rate[s] must be 'just and reasonable' in order to be constitutional…[and] [t]o be just and reasonable, rates must provide not only for a company's costs, but also for a fair return on investment." Tenoco Oil Company Inc. v. Department of Consumer Affairs, 876 F. 2d 1013, 1024 (1st Cir. 1989) (citing Williamson Planning Commission v. Hamilton Bank, 473 U.S. 172, 186 (1985)).  Further, the return "should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital." Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 603 (1944).

54. ORIL's Administrative Order Administrative Order 2022-33, which created a liquidation system that forces all dairy farmers in the Milk Industry to participate in a secondary market milk sales which pays said farmers (as Co-Plaintiff, El Farmer Inc.) prices for said milk which are below cost to produce the same is unconstitutional.  Constitutionally, the Administrator cannot enact and enforce regulations for the milk industry that do not allow Plaintiffs the opportunity to realize a reasonable profit and operate at a loss.

The acts of the Defendants under color of state law are thus depriving Plaintiffs of their federal constitutional rights.

55. Regulatory confiscation is the result of a forced margin insufficient to allow the opportunity to realize a profit.  The current rate of return allowed by the Defendants is insufficient to assure the financial survival of El Farmer Inc. because it forces it to participate in a market that is not even sufficient to pay its production costs. Thi damages El Farmer Inc's finances, the value of El Farmer Inc.'s Milk Quota, over which Condado 5 LLC has a lien, and the payment to all of El Farmer's creditors.

### III.   THE ADMINISTRATIVE PROCEEDINGS BEFORE ORIL HAVE REACHED FINALITY, THUS PLAINTIFFS ARE NOT REQUIRED CONTINUE OR INITIATE ADMINISTRATIVE REMEDIES

56. A claim of "taking" of property is not ripe until the government entity charged with implementing the regulation has reached a final decision regarding the application of the regulation to the property at issue. See Tenoco Oil Company Inc. v. Department of Consumer Affairs, 876 F. 2d 1013, 1024 (1st Cir. 1989) (citing Williamson Planning Commission v. Hamilton Bank, 473 U.S. 172, 186 (1985)).

57. The Supreme Court differentiates between the requirement of exhausting administrative remedies and the finality rule stated in Williamson Planning Commission v. Hamilton Bank, supra.  The finality rule "is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury…." Id. at 193.  In contrast, the exhaustion rule refers "to administrative and judicial procedures by which

an injured party may seek review of an adverse decision and obtain a remedy." Id. A party seeking the remedy this complaint pursues is not required to exhaust administrative remedies but must show that the administrative decision is final.  Here, the Administrator reached a final and definitive decision as to Plaintiffs' grievances prior to the filing of this suit.

58. In the present case, ORIL did in fact reduce the payment for milk sales by El Farmer Inc from January 1, 2021, through June 7, 2022, and from January 7, 2022 and forward ORIL has applied the liquidation system promulgated through Administrative Order 2022-33 which forces El Farmer Inc. to sell milk a price below cost. ORIL has already made its final decision and on the issue and has created a concrete loss and/or economic injury to the Plaintiffs, therefore there is no need to initiate Administrative Proceedings in ORIL.

## IV.   CIVIL ACTIONS BROUGHT UNDER 42 U.S.C. § 1983 FOR DEPRIVATION OF RIGHTS DO NOT HAVE TO EXHAUST STATE JUDICIAL REMEDIES

59. The congressional intent is reflected in the legislative history of § 1983's predecessor § 1 of the Civil Rights Act and the extensive congressional activity in that area of law.  It is known, that during the time in which the Civil Rights Act of 1871 and the Fourteenth Amendment (XIV) were created, the Federal Government was established as a guarantor of the basic federal rights of individuals against incursions by state power. Patsy v. Board of Regents, 457 U.S. 496, 503 (1982).

60. In the case of Mitchum v. Foster, 407 U.S. 225, 242 (1972),  the Supreme

Court recognized that "[the] very purpose of §1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights – to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'" Id. (quoting Ex Parte Virginia, 100 U.S. 339, 346 (1980). Mitchum v. Foster,.

61. In its opinion, the Supreme Court emphasized that the very purpose of the §1983 was to protect people from state governments and especially from state judiciaries.   To that end, the Supreme Court stated that: "[t]he legislative history makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts..." Mitchum v. Foster, 407 U.S. at 242.

62. Under Patsy v. Board of Regents, 457 U.S. at 504, the Supreme Court analyzed the congressional intent under the Non-Exhaustion Rule. In its analysis the Supreme Court relied on three (3) essential facts took in to account by Congress in the original version of §1983: (i) Congress intended that individuals who claim violations of federal rights should have "immediate access to the federal courts notwithstanding any provision of state law to the contrary"; (ii) Congress expressed "mistrust" for the

"factfinding processes of the states institutions" and believed "that federal

courts would be less susceptible to local prejudice and to the existing defects

in the factfinding process of the state courts" Id. at 506; (iii) Congress

desired that an individual who asserts a claim under §1983 should have a

right "to choose the forum in which to seek relief." Id.

63. In Monroe v. Pape, 365 U.S. 167, 183 (1961), the Supreme Court ruled that

"[t]he federal remedy is supplementary to the state remedy, and the latter

need not be first sought and refused before the federal one is invoked.".

Further in the case of Patsy the Supreme Court established the doctrine that

"exhaustion [of administrative and judicial state remedies] is not a

prerequisite to an action under §1983." Patsy v. Board of Regents, *supra*,

at 501.   On numerous occasions the Supreme Court has rejected the

argument that a §1983 action should be dismissed where the plaintiff has

not exhausted state administrative remedies. See McNeese v. Board of

Education, 373 U.S. 668, 671-673 (1963). See also Barry v. Barchi, 443

U.S. 55, 63 n. 10 (1979); Gibson v. Berryhill, 411 U.S. 564, 574 (1973);

Carter v. Stanton, 405 U.S. 669, 671 (1972); Wilwording v. Swenson, 404

U.S. 249, 251 (1971); Houghton v. Shafer, 392 U.S. 639, 640 (1968); King

v. Smith, 392 U.S. 309, 312 (1968); and Damico v. California, 389 U.S. 416

(1967). In the light that Congress has delegated to the federal courts the duty

to protect constitutional rights, the exhaustion of state judicial or

administrative remedies are not required. See Patsy v. Board of Regents,

457 U.S. at 500.

64. In the instant case the Plaintiffs are not obligated to exhaust state judicial remedies because the facts of this case demonstrate that ORIL has incurred in flagrant violations of Plaintiffs constitutional rights and therefore said action warrant intervention from a Federal Court.

## B.   DAMAGES

65. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

66. Plaintiff, EL FARMER INC requests the sum of damages to be determined in a hearing for those purposes for the loss of income of at least of $100,000.00 during the year 2021, loss of income of at least $50,000 during the first six months of 2022, and a loss of $9,600.00 bi-weekly beginning on June 8, 2022.

67. Plaintiffs El Farmer Inc. and Condado 5 LLC request that the economic loss in the milk quota of $2,131,460 created by ORIL is paid by ORIL towards the balance of the loan of El Farmer Inc. with Condado 5 LLC.

68. Plaintiffs request that they are paid all cost and attorney's fees that they have and will incur during this process.

69. The Plaintiffs request an amount of punitive damages to be determined by this Honorable Court for the causes of action included herein and the violation of Civil Rights incurred by ORIL.

## V.     PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS respectfully requests that this HONORABLE COURT grant judgment in hist favor in the following manner:

A. A sum of damages in favor of El Farmer Inc. to be determined in a hearing for those purposes for the loss of income of at least of $100,000.00 during the year 2021, loss of income of at least $50,000.00 during the first six months of 2022, and a loss of $9,600.00 bi-weekly beginning on June 8, 2022, until this Court enters judgment.

B. Plaintiffs El Farmer Inc. and Condado 5 LLC request that the economic loss in the milk quota of $2,131,460 created by ORIL is paid by ORIL towards the balance of the loan of El Farmer Inc. with Condado 5 LLC.

C. That Administrative Order 2022-33 by ORIL is declared unconstitutional and the liquidation system to farmers imposed by said order be declared unconstitutional because it forces farmer to sell milk below cost to produce the same.

D. Plaintiffs request that they are paid all cost and attorney's fees that they have and will incur during this process.

E. The Plaintiffs request an amount of punitive damages to be determined by this Honorable Court for the causes of action included herein and the violation of Civil Rights incurred by ORIL.

**RESPECTFULLY SUBMITED** in Mayaguez Puerto Rico, this September 14, 2022

**Attorney for Plaintiff El Farmer Inc**

**/s/ Homel A. Mercado Justiniano**

USDC- PR - 229705
Calle Ramírez Silva #8
Ensanche Martínez
Mayagüez, PR 00680
Tel: (787) 831-3577/ 805-2945
Fax: (787) 805-7350
Email: hmjlaw2@gmail.com
hmjlaw@yahoo.com

**Ferraiuoli** LLC

Attorneys for Plaintiff Condado 5 LLC
PO Box 195168
San Juan, PR 00919-5168
Tel.: (787) 766-7000
Fax: (787) 766-7001

/s/ Gustavo A. Chico-Barris
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

UNSWORN STATEMENT UNDER PENALTY OF PERJURY

I, Miguel Ramos Cruz of legal age, married, dairy farmer and resident of Isabela Puerto Rico declare the following under penalty of perjury:

1. My personal circumstances are as mentioned above

2. I'm the President of El Farmer Inc.

3. I have reviewed the document titled as Adversary Complaint with all the allegations set forth in the same and that will be filed as an Adversary Proceeding in the Bankruptcy Court for the District of Puerto Rico.

4. That the allegations set forth in said Adversary Complaint are true to my best knowledge.

5. I have prepared this sworn statement and the same will be submitted with the Adversary Complaint.

I sign this document in Mayaguez, Puerto Rico this September 14, 2022

*/s/ Miguel Ramos Cruz*