IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 22-00036 (MCF) |
| EL FARMER, INC. | CHAPTER 12 |
| Debtor | |

| | |
|---|---|
| EL FARMER, INC.<br>CONDADO 5 LLC | ADVERSARY CASE NO. 22-00067 |
| Plaintiffs, | |
| v. | |
| THE COMMONWEALTH OF PUERTO RICO;<br>THE DEPARTMENT OF AGRICULTURE; THE<br>OFFICE FOR REGULATION OF THE DAIRY<br>INDUSTRY | |
| Defendants | |

**OPINION AND ORDER**

This adversary case presents an issue of whether the court should exercise abstention under the Burford doctrine regarding a challenge to the soundness of Puerto Rico's administrative scheme of milk regulation.

Both the chapter 12 debtor, El Farmer, Inc. and its secured creditor, Condado 5 LLC, filed this adversary action against the Commonwealth of Puerto Rico, the Department of Agriculture, and the Office for Regulation of the Dairy Industry (hereinafter "ORIL" by its Spanish acronym). The Plaintiffs complain that ORIL modified a liquidation system for the payment of milk without issuing an administrative order; that as such, ORIL has made illegal discounts to their milk payments; that ORIL has issued administrative orders that are devoid of state law formalities required by Puerto Rico's Uniform Administrative Procedure Act and ORIL's Organic Act; that the liquidation system for the payment of milk adopted through Administrative Order 2022-33 has

-1-

resulted in the loss of value of milk quotas; and a decrease in profits from the sales of milk. Docket No. 1. As per the allegations, these events have been unfolding since January 2021. Id. at 9-12. The Plaintiffs aver that "ORIL's decisions have affected the market for [m]ilk [q]uota sales, and values of the [m]ilk [q]uotas" and that the liquidation system imposed by this agency's policy has caused economic loss to the Plaintiff-Debtor because it is forced to "sell milk below cost of producing the same." Id. at 14-15. Thus, the injury to the Plaintiff-Creditor is that the milk quota that serves as its collateral has lost value; and the injury to the Plaintiff-Debtor is the loss of income and the inability to refinance its loan with the secured creditor. Id. at 15. Instead of recurring to the causes of action for redress provided by Puerto Rico's legislature, the Plaintiffs invoked the Constitution of the United States, the Constitution of Puerto Rico, and section 1983 of the Civil Rights Act. The Plaintiffs also requested injunctive relief from this court upon the filing of this adversary proceeding. Docket Nos. 3 & 15. The request was treated as a petition for preliminary injunction. Docket No. 17.

After denying the injunctive relief, the bankruptcy court ordered the Plaintiffs to show cause as to why the court should not exercise abstention under the Burford doctrine or permissive abstention under 28 U.S.C. § 1334(c)(1).[1] Docket No. 23. The Plaintiffs complied with the court's order and the Defendants filed their response. Docket Nos. 31 & 40. Upon careful review of the parties' motions and the Fifth Circuit's recent opinion in the case of Electric Reliability Council of Texas Inc. v. Just Energy Texas LP (In re Just Energy Group Inc.), 57 F.4th 241 (5th Cir. 2023), the court abstains under the Burford doctrine.

Under this doctrine:

[w]here timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar;' or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of the state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989)(citing Colorado River Water Conservation District v. United States, 424 U.S. 800, 814 (1976)).

---

[1] The court will not rule on the issue of permissive abstention under 28 U.S.C. § 1334(c)(1).

All the circuits follow these requirements for abstention under Burford. 17A Moore's Federal Practice – Civil § 122.56 (2022)(with a possible exception in the Tenth Circuit). "[S]ome circuits have specified additional factors that must be considered." Id. In our circuit, Burford is appropriate when federal litigation would interfere with a state administrative scheme and where adequate state judicial review exists. Sevigny v. Emplrs. Ins. of Wausau, 411 F.3d 24, 26 (1st Cir. 2005)(citing Colorado River, 424 U.S. at 817-19). The First Circuit has cautioned that Burford is improper when the availability of adequate state-court review is untimely; federal court jurisdiction does not interfere with the state's administrative policymaking; and if the federal case can avoid conflicting with state proceedings. Chico Serv. Station, Inc. v. SOL P.R. Ltd., 633 F.3d 20, 32 (1st Cir. 2011).

This court has not identified a decision by the First Circuit evaluating the parameters of the Burford abstention in the bankruptcy context. As such, we look to the case of Just Energy, where the Fifth Circuit determined that the Burford doctrine applies in the bankruptcy context. Just Energy, 57 F.4th at 248. The dispute in the appealed bankruptcy decision dealt with the state of Texas' electric utilities regulatory body and the independent organization that manages the wholesale electricity market in that state. Id. at 245. The debtor in that case alleged that these two entities intervened in the market by setting high prices after a natural disaster. Id. at 246. The debtor complained that it had paid millions of dollars to the independent organization for charges stemming during the emergency, which eventually drove it into bankruptcy. Id. The debtor contended that the price scheme was unlawful under the Administrative Procedure Act, the Public Utility Regulatory Act, the independent organization's protocols and the Standard Form Market Participant Agreement. Id. The independent organization raised the Burford abstention. Id. at 247.

The Fifth Circuit has identified five factors to be considered by federal courts when deciding a Burford abstention, which are:

> (1) whether the plaintiff raises state or federal claims, (2) whether the case involves unsettled state law or detailed local facts, (3) the importance of the state's interest in the litigation, (4) the state's need for a coherent policy in the area, and (5) whether there is a special state forum for judicial review.

Id. at 249 (citing Harrison v. Young, 48 F.4th 331, 339-40 (5th Cir. 2022)).

-3-

After pondering these factors, the Fifth Circuit concluded that the Burford doctrine applied to the controversy before it. The Fifth Circuit noted that while the debtor's complaint raised a federal claim, which weighed against abstention, it did not settle the issue. Just Energy, 48 F. 4th at 249-50. The debtor's complaint was "'entangled in a skein of state law that must be untangled before the federal case c[ould] proceed.'" Id. at 250. The importance of the state's interest in the litigation was found by observing that the Texan legislature had created its energy regulatory scheme "'to protect the public interest inherent in the rates and services of electric utilities.'" Id. at 251. In reviewing the state's need for a coherent policy, the Fifth Circuit stated that "[a]bstention is proper when a state regulatory scheme faces potential disruption." Id. at 252 (citing Grace Ranch v. BP Am. Prod. Co., 989 F.3d 301, 318 (5th Cir. 2021)). It observed that in the case before it, "[f]ederal intervention necessarily affects all market participants" and that it would result in a "domino effect." Id. at 253. The Fifth Circuit observed that the Texas state court system was equipped to adjudicate the parties' dispute. Id. at 254. When analyzing if a state forum is adequately equipped, courts must look to whether review "includes the ability to appeal agency orders to a state trial court, with available state appellate review, and such review may include initial review by the agency." Id. at 253.

The case at hand is similarly situated to Just Energy. The Plaintiffs claim that federal law is involved because they allege violations to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the Constitution of the United States. Docket No. 31 at 2. Under the first factor, while these allegations weigh against abstention, it does not settle the issue.[2] The federal matter cannot be resolved until questions about Puerto Rico administrative law and ORIL's organic act are untangled.[3] This leads us to the second factor which is met, because the Plaintiffs complain of the effect of an administrative order that stems from a complex regulatory scheme enacted by the

---

[2] Actions under 42 U.S.C. § 1983 "may be brought in state courts." Maine v. Thiboutot, 448 U.S. 1, 11 (1980); Martinez v. California, 444 U.S. 277, 283-84, n.7 (1980). State courts are also equipped to interpret the Constitution of the United States. Evans v. Thompson, 518 F.3d 1, 5 (1st Cir. 2008); see also, Martin v. Hunter's Lessee, 14 U.S. 304 (1816)(state courts' interpretation of federal law or the Constitution is reviewable by the Supreme Court of the United States). Moreover, "[a] plaintiff's incidental insertion of a general claim for damages will not suffice to prevent the dismissal of a 42 U.S.C. § 1983 case under Burford abstention principles" when the damages cannot be awarded without declaring the unconstitutionality of a determination firmly committed to the state. Blumen v. Hallova, 568 F. Supp. 3d 1093, 1114 (D. Or. 2021).

[3] The First Circuit has held that Burford applies "when a claim requires the federal court to decide predominating federal issues" that would first require the resolution of "doubtful questions of law and public policy." Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 474 (1st Cir. 2009).

Puerto Rican legislature and further developed by the administrative agency that regulates the milk industry.[4] 5 L.P.R.A. §§ 1092-1118. Regarding the third factor, we find it present in the fact that the purpose of ORIL's organic act is to protect the public's interest in matters such as health and the price of milk. 5 L.P.R.A. § 1096. Thus, the state has an important interest in ORIL's policy making process. Under the fourth factor, it is evident that the complaint has an effect over all the participants of Puerto Rico's heavily regulated milk producing industry. The bankruptcy court is unable to carve out a special remedy for the Plaintiffs. Lastly, Puerto Rico's court system is equipped to entertain the issues of which the Plaintiffs complain. ORIL's organic act contains two sections regarding judicial review of an administrative order such as the one before us. 5 L.P.R.A. §§ 1103 & 1106. The Plaintiffs did not explain why the administrative order was not challenged pursuant to the procedure established by ORIL's organic act.

Our approach under the Fifth Circuit's analysis of Burford in the bankruptcy context does not contradict the guidelines provided by the First Circuit. A determination by this court on the issues presented in the complaint could interfere with Puerto Rico's administrative scheme of milk regulation. ORIL's administrator has broad powers to "regulate the production…and sale of milk and dairy products." Docket No. 25-2 at 1. The challenged administrative order expresses that the administrator "shall have authority to…maintain satisfactory marketing conditions" and "[e]stablish systems or methods of payment or liquidation to producers" under 5 L.P.R.A. §§ 1096(b)(3) & 1096(b)(12). Id. The Puerto Rico legislature equipped ORIL's organic act with causes of action to challenge the administrator's orders at 5 L.P.R.A. §§ 1103 & 1106, but no reason has been given as to why this path was not taken or why would it have been a futile exercise.

The bankruptcy court is not the appropriate forum to review the soundness of ORIL's policy and doing so would be disruptive of the state's efforts to enact policy with respect to a matter of substantial public concern. The bankruptcy court declines to pass judgment over the public policy of the Commonwealth of Puerto Rico, with respect to the pricing of a heavily regulated commodity, such as milk. The bankruptcy court's role is to oversee matters concerning the administration of the estate; allowance or disallowance of claims against the estate; exemptions from property of the estate; estimation of claims or interests for the purposes of confirming a

---

[4] The Plaintiffs complain of the effect of the challenged administrative order, not of ORIL's entire regulatory scheme. Docket No. 1 at 26.

-5-

chapter 11, 12 or 13 plan; and other core matters. 28 U.S.C. § 157(b)(2). Consequently, the adversary complaint is dismissed in its entirety without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of March, 2023.

_____
MILDRED CABAN FLORES
United States Bankruptcy Judge